The next matter on our calendar is United States of America v. Ralph Daniel Smith. Thank you. Your Honors, may it please the Court, this is yet another case involving the child pornography sentencing guidelines where a sentence is alleged to be substantively unreasonable. Mr. Smith's conduct in this case was certainly illegal. It was very cruel conduct, but it does not warrant a 20-year sentence and lifetime supervised release. That sentence was substantively unreasonable. Mr. Smith was a first-time offender. He took full responsibility for his wrongdoing. He was found by a psychologist to be a low risk to his life. His offense of conviction did not involve any actual touching, physical force or violence. Your Honors, the dis— It involved psychological torture. It did, Your Honor. And 15 years is an adequate sentence for psychological torture. I will not deny that. So 15 years, the difference between 15 years and 20 years is the difference between a reasonable sentence and an outside-the-ballpark, totally outrageous sentence. Five years, Your Honor— I understand it's an important distinction, but the question is, is it a distinction that transforms a sentence from within a reasonable sentence to something totally outside the bounds of what anyone could think was the right sentence for this case? I think it could, Your Honor. Five years is a very long time. In terms of—and more to the sentence being substantively unreasonable, I raised what I believe to be a novel argument in the district court that the court should have considered the possibility of civil commitment. As Your Honor stated, the appellant's conduct was cruel. It was psychological torture. But clearly, this is a case where 15 years down the line, civil confinement should have been appropriate. And that was one factor the district court erred in disregarding. Now, that issue in that court and in this court was couched at. Can you talk about the lifetime prohibitions included in the probation portion of this sentencing? I'm sure, Your Honor, I did not catch the question. I apologize. Would you speak about the restrictions on this person embodied in the lifetime reporting duties? So, that was not what I was discussing. I'm not sure if the court wants me to address that. I was discussing the possibility of civil— I know. I changed the topic. I apologize, Your Honor. Yes. So, Your Honor, the court imposed supervised release for life. She gave—the district court judge gave absolutely no reasons as to why that was necessary. The court imposed strict conditions on the appellant without any reasons at all. In Jenkins, recently, this court stated that a court ought to give proper reasons to impose lifetime supervised release, which was not done in this case. And so, on that issue as well, Your Honor, the sentence was substantively unreasonable. Also, we have said in cases in our court that a lifetime limitation on using computers or books is not commensurate with the crime. It's too harsh. Right, Your Honor, and I would agree that that is the case in this case as well, that the court really gave absolutely no reasons as to why all of these things should take place for the rest of Mr. Smith's life. Is there any argument in your brief about the specific conditions imposed as part of the supervised release? I didn't even see a reference to what they were, let alone an attack on the conditions as excessive. Your Honor, my focus was simply an issue which I believe precedes the one raised by the court now, which is simply the court gave no reasons as to why supervised— That's the length of the supervised release, not any particular condition that was imposed as part of it is what you've objected to. Exactly, Your Honor. Again, his conduct was very, very cruel. Clearly, there had to be some conditions, but life was much too long. And so, Your Honors, in the result, I believe this case should be remanded for resentencing on both the issue of whether 15 years would have been— or, pardon me, whether 20 years was substantively unreasonable and whether lifetime supervised release was appropriate in this case. I take it he would be a registered sex offender in any event as a result of this conviction and the state conviction that did involve the actual touching, etc.? That is correct. And is there— can you elaborate on what distinctions there are between that process and the supervised release? Many of those conditions overlap in terms of not being near children, not being near schools, playgrounds, restrictions on computers. It will certainly depend on which classification of sex offender he is found to be once he is released. Of course, as a procedural matter, the supervised release would subject him to the risk of reincarceration if he violates those terms, and I'm not sure how that plays out with respect to the registration issue. And again, it would depend on which category of registration, Your Honor, but certainly the lifetime would subject him to reincarceration. And if I may just note that Judge Weinstein in the Eastern District of New York found that I believe there has only ever been one case in the Eastern District where an individual under post-release supervision in a child pornography case has reoffended. Yeah, but this is not, as you argued yourself, a child pornography case in the ordinary sense. In other words, first of all, this is a person who, whatever the particular offense here, does have a conviction in the state court for the actual molestation of the victim in this case, right? That is correct. And the conduct here that carries the sting, the photography is somewhat incidental to the overall pattern of conduct. I would agree, Your Honor, which is why it's bizarre that he could only receive a maximum of seven years in the state court system. The problem with the state court system, this is the first time I've heard an argument that the fact that the conduct is worse than just taking pictures means that it's an inappropriate case to impose the severe penalties that come under federal law for mere child pornography offenses. It seems a little upside down, doesn't it? I mean, this is a case that is not the typical case where some guy sits in his basement and looks at pictures on the Internet. Right. I would agree, Your Honor, this is more of a child exploitation case than a child pornography case, but it's the child pornography aspect of the case that leads . . . Gets it to federal court. Right. And it's just such a draconian sentence. Unless there are any questions, that concludes my argument. I have reserved two minutes for rebuttal. Thank you, counsel. Thank you. We'll hear from the government. May it please the court. The district court sentence here was the result of very careful consideration of the sentencing factors. The defendant here successfully argued for a well below guideline sentence. He received a sentence that's only five years above the statutory minimum and far below the sentence of life that was recommended. It would be the sentence if all the guidelines were added together. Was that 240 years? It was, Your Honor, and this court has said . . . Is there anything wrong with guidelines that would produce a 240-year sentence? Your Honor, the way you get to that 240-year sentence is by stacking all the various counts which represent individual instances of production, and what it equates to is a life sentence. Now, you can say it's a 240-year sentence, but as a practical matter, the district court knew what the guidelines called for was for this defendant to spend the rest of his life in prison. And the reason it did that primarily over another kind of defendant was because he engaged in a year-long pattern of sexually abusing his own daughter. Now, if you want to say that that's inappropriate, that's fine. The judge actually in this case agreed that that was too much punishment. But the idea that the guidelines are irrational because they called for a life sentence, I think, would take this court . . . especially in a case like this where you have both production and abuse . . . But no distribution. Well, he distributed the images back to the victim as another form of torture while he's grooming her for sexual abuse. But he did not distribute it in the pornography market. He did not, Your Honor, as far as we know, and he made the victim believe that he did. He took the false identity of someone who was a friend, perhaps, of the made-up character Dan Smithson and said, look what I found. And then, you know, this is after he starts abusing her. He then shows her these images and said, look, this stuff is out there. And this victim had to spend the next year not only being abused, but knowing that . . . or believing that these images were out there. Now, as far as we know, they weren't distributed, and the district court took that into account in lowering the sentence. The guidelines called for a life sentence. She gave him 20 years, which is only five years above the maximum. Given the heinous . . . Above the minimum. Above the minimum, excuse me. Given the heinous nature of this offense . . . And also given that the defendant, if I'm not mistaken, used the lifetime special parole affirmatively as a bargaining chip to get that lower sentence and said, look, if you think that I need to be under control for life, you should give me lifetime supervised parole instead of the guideline sentence. Is that not right? That's correct, Your Honor. That's why we believe this is one of the rare cases where you have an actual waiver of an argument against life supervision. He was using it effectively as a way to convince the district court to lower the sentence by . . . you know, as a practical matter, at least 40 years, 50 years below what the guidelines required. Counsel, I just have to say, I don't think the district court gets any points for reducing a sentence that could have been 240 years. What it called for was . . . Your Honor, the statute here, the statutes under which he was sentenced do not allow for a life sentence. So this court has repeatedly affirmed the practices of the district court in calculating what a guideline sentence means in those situations. You stack the maximums to the extent that you would get the total punishment. This court in Brown, this court most recently in . . . one second . . . it was a summary order recently issued by Judge Jacobs, who was on the panel in Jenkins. You're saying the 240 year sentence is not actually something that the guidelines recommend. What the guidelines recommend is a life sentence, and then because, by operation of the mechanics of law, because a life sentence is not available, the putative guidelines that this court and others have said you wind up with is stacking all the maximum sentences. But basically, what the guidelines said was imprisonment for life. That's right, Your Honor, and . . . How old is this gentleman? He was 41 at the time of sentencing. I think he's 42 now, and what the sentence will result in is I think he gets out when he's 58. The other case I was mentioning is United States v. Chase, which was issued on June 5th, where Judge Jacobs again accepted that the correct way of doing this is to stack all the maximums. Now, as a practical matter, the judge did know that what the guidelines called for was a life sentence, not a 240 year sentence necessarily, but life, and she departed far below that. So I do think, Your Honors, under the concerns raised in Dorvey and Jenkins, the district court should get credit for giving thoughtful consideration to the guidelines. I would also point out here, Your Honor, we're dealing with a production guideline. We're not dealing with 2G 2.2. The inherent enhancements that were criticized in Dorvey and Jenkins were not present here. The enhancements that were imposed under the guidelines, I think, are entirely appropriate. They're for the age of the victim, for the distribution of CP back to the victim, the fact that he was the parent of the victim, the assumption of a false identity to persuade or induce the victim, and then, on top of that, the Chapter 4 enhancement for the pattern of abuse. Could you speak to, a moment, while you're at the podium, about the lifetime prohibition of using a computer or any books that would be legal? I would, Your Honor, but I think I would first like to say this issue was never raised, not below, not here. It seems to me entirely unfair to jump into that, raise that issue without requiring him to show some kind of, to make that claim. This Court has rejected many claims by defendants that were never raised in their briefs. Here, he affirmatively called for, he noted in the District Court the extensive conditions of supervised release that were being imposed as a reason to reduce his sentence of incarceration, and that's what happened. Now, to come back and criticize these conditions, I think, is not only against the settled law of this Court, but also, it's unfair to all the number of defendants who have come before who haven't gotten that chance. Would it be open to the defendant to make some application when the supervised release term begins after his release from prison to alter the conditions of the supervised release? That's right, Your Honor. Under 3583E, he can make that application. At that point, if he made that application, particularly at a point in time when it will actually apply to him, and after he has undergone whatever putative efforts at rehabilitation the prison system might or might not apply, the District Court could evaluate that and decide whether those conditions should be changed, and if it said no, he would have a right to appeal that. That's right, Your Honor. Maybe the government would argue then that his waiver still applied, and maybe it wouldn't, and the Court could evaluate that at that time. That's correct, Your Honor. Again, I think also, I think the Court's concerns about these conditions is emanating from Jenkins. I do not know, obviously, the status of Jenkins. I know that the mandate has not issued in that case yet, but even further than that, I think what the Jenkins Court said was they were . . . the Jenkins Court, I think, in the majority . . . the opinion of the entire panel, not the opinion of the majority, said, we do not doubt for a moment that there are cases in which some or all of the conditions opposed by the District Court would be required and reasonable, but given Jenkins' personal characteristics and the nature of his offense, the Court found those restrictions too severe. Here, I believe, Your Honor, if the Court were to suddenly reach this issue, I think the conditions here were justified. Can't we conclude right now that in twenty years, prohibition of using a computer would be devastating to anyone . . . In twenty years, there may not be computers. For anyone who would hope to have, I don't know, about a job, volunteer. I don't know what . . . this is something that came out of Jenkins. I do not know what evidence the Court is basing its idea that requiring someone to notify their employer that, hey, I used a computer to commit this offense, this is the nature of my offense, would render that person unemployable over and above the fact that they are convicted of a child pornography offense. This seems . . . Your Honor, I just don't know where that's coming from. It seems like you would have to have some kind of . . . again, this would be the value of raising this in the District Court and having it presented here properly, but to conclude somehow that these conditions render people unemployable, I think, is a vast overstatement without any evidence. And again, I think, given the nature of this crime, he used computers in a very sophisticated way to conceal his identity. He used this computer to basically psychologically torture his victim. I think an employer should have every right to know that that's what happened in the past and to allow the employer the opportunity to monitor the defendant. . Mr. Smith will not get out until he is 64 years old... as opposed to 58 years old. In terms of distribution, Mr. Smith did not distribute any of the three images he produced. He did send one picture to the victim in her underwear. That, of course, is not sexually explicit. The second image, as the court found, and that's paragraph, or not paragraph, pardon me, page 45 of the appendix, the victim never received the sexually explicit picture. It seems as though he sent it, but she never received it. In terms of the government's argument that Mr. Smith used a computer in a sophisticated manner, he simply had a cell phone with an app called Text Plus, which sort of places one phone number on top of the other, and that is what they used to text. I would hardly call that... Let me ask you this. You mentioned in your opening argument that your client had accepted responsibility, and looking at this record, I'm not so sure he did. He said he did, but what we look for when somebody says that is what else do they say? He had these blackouts he couldn't remember. He never apologized to the victim. He apologized to other people, but not the victim. He kind of blamed her for blurring the line between appropriate and inappropriate conversations. Does this guy really know what he did? Your Honor, that is the reason he needs treatment. He certainly apologized to the court at his sentencing. He apologized to the court. He did, yes. And he regretted everything he had done. He submitted a statement to probation where he... He gets the points. He gets the points. I understand that, under the guidelines. That's fine. And, Your Honor, to respond to Your Honor, this is why he needs treatment, because he may not completely understand what he did, how awful it was, and what not. But that's what treatment's for. If I may conclude by noting, we did not waive the issue of the lifetime supervised release. On two occasions, I stated the court can impose lifetime supervised release. The acknowledgment that the court could do that within its power is... It's a stretch to say... But was that not in a context of why a life imprisonment sentence would be too much? Because the court could do supervised release instead. If the court carefully considered the issue and found that there were appropriate reasons as to why lifetime would apply, it wasn't simply, we acknowledge lifetime applies... Of course not. Of course not. But wasn't it effectively an argument in favor of reducing custodial time in favor of giving lifetime supervised release? If the court found it appropriate and gave appropriate reasons why that were the case. All right. Thank you. Thank you. Thank you both for an interesting case. We'll reserve decision.